**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHARROD HOLMES,

      Petitioner,

v.                                                                  CASE NO: 8:13-CV-185-T-30AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

      Respondents.

_____/

**ORDER**

      THIS CAUSE comes before the Court upon the petition of Sharrod Holmes to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2254 (Dkt. #1) filed on

January 17, 2013, challenging his state convictions arising out of the Sixth Judicial

Circuit, Pinellas County, Florida.  The State responded in opposition (Dkt. #9) on July

1, 2013.

**Background**

      Holmes was charged with various counts of attempted murder, aggravated assault,

and felonious possession of a firearm.  He pled *nolle prosequi* to the aggravated assault

charge prior to trial. A jury found Petitioner guilty of all other counts.  Petitioner's

sentence was affirmed on appeal.  *Holmes v. State*, 19 So. 3d  990 (Fla. 2d DCA 2009).

      Petitioner then filed a *pro se* post-conviction motion for relief pursuant to Florida

Rule of Criminal Procedure 3.850 claiming his counsel was ineffective for:

1

1. failing to object to the prosecutor arguing facts not in evidence;

2. failing to object to the prosecutor commenting on the Petitioner's silence;

3. failing to object to the prosecutor interjecting his opinion on the truthfulness and veracity of witnesses impermissibly bolstering the state's case;

4. making a boilerplate motion for judgment of acquittal and failing to argue that the State failed to refute Defendant's hypothesis of innocence;

5. failing to object and/or moving for a mistrial based on misconduct by the prosecutor;

6. failing to object to irrelevant evidence/testimony being presented to the jury solely to confuse and inflame the passions of the jurors;

7. a cumulative effect of deficient performance and prejudice rendered therein;

8. failing to call Torious Williams as a witness;

9. failing to properly cross-examine Tamaria Johnson; and

10. filing only a boilerplate motion for a new trial.

The State Circuit Court addressed each of the grounds and summarily denied them without a hearing. Now, Petitioner has filed a timely § 2254 petition for habeas relief.

## **Section 2254 Petition**

In his Petition for habeas corpus relief in this Court, Holmes asserts his counsel was ineffective for:

1. failing to object to the Prosecutor arguing facts not in evidence;

2. failing to object to the Prosecutor commenting on the defendant's silence;

2

3.      failing to object to the Prosecutor interjecting his opinion on the truthfulness and veracity of witnesses impermissibly bolstering the state's case;

4.      making a boilerplate motion for judgment of acquittal and failed to argue that the State failed to refute Defendant's hypothesis of innocence;

5.      failing to object and/or move for a mistrial based on misconduct by the Prosecutor.

6.      failing to object to irrelevant evidence/testimony being presented to the jury solely to confuse and inflame the passions of the jurors;

7.      the cumulative effect of counsel's deficient performance;

8.      failing to call Torious Williams as a witness;

9.      failing to properly cross-examine Tamaria Johnson;

10.     filing a boilerplate motion for a new trial; and

11.     failing to object to the trial court abandoning its neutrality.

## **Standard of Review**

Ineffective assistance of counsel claims must meet the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a prima facie claim under *Strickland*, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense a fair trial. *Id.* Deficient performance is performance that is "[un]reasonable[] under prevailing professional norms." *Id.* at 688. And, prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner must satisfy both *Strickland* prongs to receive habeas relief. If a claim fails either prong, the Court does not have to address the other prong to decide

Petitioner's ineffectiveness claims. *Wright v. Hopper*, 169 F.3d 695, 707; *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

## Discussion

**Ground One:**          Trial Counsel was ineffective because counsel failed to object to the prosecutor arguing facts not in evidence.

As support for this ground, Petitioner states: "the prosecutor argued that the Defendant seen by witnesses committing this act and specifically that Tamaria Green said it was him." This claim relates to the prosecutor's statement made in opening, but is factually insufficient to support a request for habeas relief.

First, counsel's decision whether to object during the State's opening statements constitutes trial strategy.   Trial counsel generally does not know whether the prosecutor can prove everything claimed in opening statements.  Often, the better strategy is to wait until closing and point out the State's failed promises.  That is what happened here.

Trial counsel actually made arguments and elicited testimony throughout the trial to undermine the State's opening statements. For example:

Defense: Opening Arguments (T.T., Vol. 3, P. 134-35)

"This is was a fight in which you will hear witnesses (say) pool balls were flying, pool sticks were flying. However, nobody identified the defendant, Mr. Sherrod Holmes, as shooting a gun."

"I don't believe you will hear any testimony of anyone else who saw an actual shooting occur."

"Mr. Jenkins obviously was able to pick Mr. Holmes out in a photopack because he knows Mr. Holmes. They have had some bad - - I guess he has an issue with Mr. Holmes over the relationship with Ms. Green. He didn't say Mr. Holmes shot at him that night. He didn't identify Mr. Holmes as an individual who pulled the trigger on a gun."

Defense:  Tamaria Johnson's Cross-Examination (T.T., Vol. 2, P. 122).

Q       Okay. And you're telling -- did you ever see Sherrod Holmes
        with a gun?

A       No.

Q       And do you know whether or not your brother had a gun?

A       No.

Q       You don't know whether he had a gun or not?

A       No, my brother did not have a gun. Neither - - I never seen
        either one of them with a gun.

Defense: Closing Arguments (T.T., Volume 3, P. 488-92)

"But the point is there's no physical evidence to link Sherrod Holmes to the
chasing around the pool table or the firing the gun."

"And if you remember when I asked Detective Noodwang, they said they
could identify the shooter, the person that ran with the gun, and nobody did
that."

"So there's a great deal of question about the identity of Sherrod Holmes as
the person that      chased Jenkins around the table and the person that ran
out with the gun. And there's an even      a bigger question about Sherrod
Holmes as the person that fired the bullets through the glass  window  into
the lobby."

"[A]ll people that said they saw - - clearly saw the person with the gun in
the bar, nobody said it's Sherrod Holmes."

The  record  reflects  that  the  Petitioner's  counsel  appropriately  challenged  the

State's comments made during opening statements.  Trial counsel's performance was not

deficient. Thus, Petitioner's claim fails the *Strickland* standard.

**Ground Two:**      Trial Counsel was ineffective because counsel failed to object to the prosecutor commenting on the defendant's silence.

In this ground, Holmes contends the detective's testimony and the prosecutor's comment during opening concerning Holmes' lack of an answer when confronted with the evidence were improper comments on his right to remain silent.  As support for this ground, Holmes quotes from the record:

State: Detective Noodwang's Direct Examination (T.T., Vol. 2, P. 132)

"He couldn't give me anything other than just a subject with a blue car that drove him and he paid him $20"

"I asked him about - - where is your girlfriend? Where is the other girl? He didn't have any answer for that, just that he jumped in a car and left."

"And at that point his demeanor changed. He actually put his head down in his lap and he just sat there, and I thought maybe he would come up and tell me something, and then he put his head back up and he said, you know a person could be looking at a lot of time for this."

State:  Opening Statements (T.T., Vol. 2, P. 132).

"[H]e just hung his head down low for a couple of minutes."

The Supreme Court holds that a comment about silence is only unlawful when it deals with a defendant invoking his Fifth Amendment self-incrimination right or when an attorney comments on a Defendant invoking his *Miranda*[1] right, not as to a defendant's demeanor.  *See Mitchell v. U.S.*, 526 U.S. 314, 315 (1999); *Griffin v. California*, 380 U.S. 609, 614 (1965); *Solomon v. Kemp*, 735 F.2d 395, 401 (11th Cir. 1984).  Here, the comments were not about Holmes invoking his right to remain silent.  In fact, Holmes waived this right.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The record shows that the Prosecutor and Detective commented about the Defendant's demeanor, not his constitutional Fifth Amendment silence. In fact, the Detective alluded to this when he stated: "his *demeanor* changed."  And the Prosecutor's opening statement commented about Petitioner's demeanor during questioning. The Prosecutor's comments are permissible because a Prosecutor is allowed to refer to the Defendant's physical demeanor. *State v. Jones*, 867 So. 2d 398 (Fla. 2004).

Moreover, the Prosecutor may comment on Petitioner's silence or demeanor when the Petitioner does not invoke his Fifth Amendment privilege.  *See Hutchinson v. State*, 882 So. 2d 943 (Fla. 2004). Here, Petitioner was given his Miranda rights, and then proceeded to agree to be interviewed by Detective Noodwang. Thus, the record in its totality fails to reflect any violation of Petitioner's constitutional rights.  Therefore, this ground fails.

**<u>Ground Three:</u>**    Trial counsel was ineffective because counsel failed to object to the prosecutor interjecting his opinion on the truthfulness and veracity of witnesses impermissibly bolstering the state's case.

In this ground, Holmes contends the prosecutor improperly commented on Holmes' veracity by claiming Ms. Johnson refuted his testimony.  Petitioner claims Ms. Johnson's testimony supports his testimony about whether he wore a "memory" shirt the night of the shooting.  However, this is contrary to the record:

State:  Cross-Examination of Sharrod Holmes (T.T., Vol. 4, P. 428-29).

Q    Now, do you have a family member that's deceased?   A brother?

A    Yes, sir.

Q       A younger brother or older brother?

A       My oldest brother.

Q       And isn't it true that you have a shirt commemorating that?

A       Yeah, Lil' C Records, yes.

Q       Sir, I'm just asking you if you have a shirt that commemorates his death.

A       No, sir, not a memory. It's Lil' C Records. I don't even wear that.

Q       And it has a picture on the front, doesn't it?

A       Of Lil' C Records, yes, it does.

Q       Its got writing on the back, correct?

A       Yes, it does.

Q       Does it say rest in peace?

A       No, it does not.

Q       What are you saying is on the front of that shirt?

A       Lil' C Records, and on the back is my name, Caesar La Beast, my rap name, sir.

State:  Direct Examination of Tamaria Johnson (T.T., Vol. 3, P. 197; 201-02).

Q       Now, isn't it true that you told Detective Noodwang that he was wearing a white T-shirt with a picture on it and R-I-P on the back?

A       From reading the statements, yes.

Q       Okay. And that's what you said at the time, white shirt, photo on the front, rest in peace in the back?

A       Yes. Four years ago, yes.

Q      Of the people you personally saw - - not all the people in the club, because you're telling me you didn't see all the people in the club. Of the people you personally saw, was the defendant the only person wearing a white shirt with the photograph that said rest in peace in the back?

A.      Yes, I personally saw.

State:  Closing Arguments (T.T., Vol. 5, P. 474-75).

"Now, how else do we identify the defendant?  Well, this shirt.  Tamaria indicated that the defendant was wearing a particular shirt, and this shirt had a photograph on it, and it said rest in peace in back."

"Now, think about what the defendant testified. What did he say about that? I asked him, do you have a brother that passed away?

Yes.

Do you have a shirt to commemorate that?

I do.

Does it have a photograph on it?

No.  It says L.C. or some company name.

Completely untrue. We brought Tamaria back in here to explain to you he has the commemorative memory dedication shirts."

Ms. Johnson's testimony sufficiently contradicted Holmes' testimony to support

the prosecutor's comment about veracity.  Thus, Petitioner's claim is meritless.

**<u>Ground Four:</u>**      Trial counsel was ineffective because counsel made a boilerplate motion for judgment of acquittal and failed to argue that the state failed to refute defendant's hypothesis of innocence.

Holmes contends that, in this circumstantial case, the State failed to come forward

with sufficient evidence to refute every reasonable hypothesis of innocence, particularly

his theory of defense.   But the requirement is the State need only have consistent

9

evidence that shows guilt and evidence inconsistent with any reasonable hypothesis of innocence. *Darling v. State*, 808 So. 2d 145 (Fla. 2002); *see State v. Law*, 559 So. 2d 187 (Fla. 1989). The State does not have to "rebut conclusively, every possible variation of events," but does have to "introduce evidence which is inconsistent with the defendant's theory of innocence." *Darling*, 808 So. 2d at 156 (Fla. 2002); *Troy v. Sec'y of Dep't of Corr.*, 2013 WL 24212, *13 (M.D. Fla. Jan. 2, 2013). The State did present evidence inconsistent with Holmes' defense that he was not the shooter.

Beginning with the clothes Holmes was wearing on the night of the shooting, Petitioner contends he was not wearing his brother's "memory" shirt. As explained previously, the shirt placed him at the crime scene. (T.T., Vol. 4, P. 428-29). Ms. Johnson's testimony was that Holmes was wearing the shirt on the night of the shooting. (T.T., Vol. 3, P. 197; 201-02). This was contrary to Holmes' testimony.

Also, Holmes contends that he did not have a gun during his fight with Mr. Jenkins. However, the State presented a witness, Zeron Rance, that stated: "I walked towards the bar, and I saw a gentlemen holding a semiautomatic handgun." (T.T., Vol. 3, P. 277). Additionally, the testimony of both Eddie Wooten and Larry Sams corroborates the testimony of Mr. Rance:

State:  Direct Examination of Eddie Wooten (T.T., Vol. 3, P. 253-56).

Q      Okay. At that time did you look around to see who was holding the gun?

A      I looked around and I saw a gun.

Q      Okay. And was it one of the people that was involved in the fight that you just talked about between the larger black male and a smaller black male that had the gun.

A      That I'm not sure.

Q      I'm gonna approach with your statement to the police on the night that it happened. Would you agree that when it happened and you gave a statement to the police, it would be fresher in your mind than today some three years later?

A      Possibly.

Q      Okay. If you could read the highlighted portion of your statement, in this statement do you remember telling the officer the smaller black male was the one with the firearm?

A      I - - honestly, I couldn't say if it was actually him that had the gun.

Q      Okay. I'm asking you if it was the smaller black male that had the firearm, which is indicated in the report?

A      Well, there was a smaller black male that had a gun.

Q      Okay. And wasn't that the smaller black male that had been fighting with the larger black male?

A      I'm not sure if it was.

Q      Okay. And that date you told me that it was the smaller black male that was with the larger black male fighting that had the handgun?

A      I remember saying that it's - -

Q      Okay. Where was the smaller black male pointing the gun?  Where in the bar was he when you saw him pointing the gun   down?

A      That pool table right there.


State:  Direct Examination of Larry Sams (T.T., Vol. 3, P. 225; 231-32).

Q        And what did you see? Did you see anything in that smaller black male's hands?

A        I saw a gun.

Q        Okay. And was that smaller black male with the shirt with the drawing chasing that larger black male?

A        Yes, sir.

Q        Okay. Now, did you see what that smaller black male with the white shirt and the drawing or picture? Did - - that same black male we're talking about, did you see what he was doing with the gun?

A        He just had it in his hand.

Q        Okay. Was he trying to fire it?

A        It was - - it had jammed.

Q        Okay. How many times did you see him approximately try to fire that gun?

A        Three or four time, five times. It was hard to tell with all the music and everything.

Q        But you could definitely see him pulling the trigger and trying to fire it?

A        Yeah.

In sum, the State submitted sufficient evidence from which a jury could conclude that all reasonable hypotheses of innocence were countered.  Since this argument would have been meritless, defense counsel cannot be faulted for not making it.

**Ground Five:**        Trial counsel was ineffective because counsel failed to object and/or move for a mistrial based on misconduct by the prosecutor.

Petitioner claims that the State engaged in misconduct by pointing out the Petitioner to the witness before the witness testified. A Prosecutor identifying the

Petitioner to the witness constitutes a denial of due process only where the identification is "unnecessarily suggestive and conducive to irreparable mistaken identification." *Irwin v. McDonough*, 243 Fed. Appx. 486, 492 (11th Cir. 2007). And, even if there was suggestive conduct, that conduct alone does not violate due process. *Neil v. Biggers*, 409 U.S. 188 (1972). Instead, a court should take into account the "totality of the circumstances." *Id.* at 199.)  The record indicates the following concerning the witness' identification of Holmes:

State:  Examination of Charlie Jenkins (T.T., Vol. 3, P. 183-84).

Q      Now, when you spoke to Detective Noodwang, did you tell him that the person that you identified in this photopack was chasing you around the pool table trying to shoot you?

A      No, I didn't.

Q      Did you identify the person in the photopack as the person that shot at you to Detective Noodwang?

A      No.  I identified the person that I was fighting with.

Q      Okay. What I'm asking you is did you identify the person that shot at you?

A      No.

Q      So did you not tell that to Detective Noodwang?

A      No.

Q      The person that you were fighting with, do you see him in the courtroom today?

A      The only way I recognize him because when he came in today you showed him to me.

Q      But otherwise you wouldn't?

13

A      I thought the guy was locked up. You all never sent me a victim notice.

Q      I'm asking you a question. The answer is yes or no. Do you recognize him in court today?

A      Yeah.

Q      Other than - - other than - -

A      As soon as you showed him to me, I recognized him.

The record indicates that Mr. Jenkins first identified Petitioner in a photopack shown by the Detective. Then, before Petitioner's trial the Prosecutor pointed out the Petitioner to the witness. The witness was asked whether he recognized the Petitioner from the crime, to which he replied that he did. Under these circumstances, the State did not commit misconduct, and Petitioner's counsel did not have a duty to object. Therefore, Petitioner's claim lacks merit.

**<u>Ground Six:</u>**      Trial counsel was ineffective because counsel failed to object to irrelevant evidence/testimony being presented to the jury solely to confuse and inflame the passions of the jurors.

Petitioner contends that the evidence presented at trial, pictures of the victim's injuries and the expert's testimony of the gun used, were irrelevant because the only issue in the case was the identification of the shooter.  Petitioner is mistaken. The State presented this evidence in order to meet its burden under Florida Statute Section 775.087(2)(a)(3)2:

Any person who is convicted of a felony or an attempt to commit a felony listed in subparagraph (a)1.,[2] regardless of whether the use of a weapon is

---

[2] Murder is enumerated as an offense under F.S.A. § 775.087(2)(a)(1).

an element of the felony, and during the course of the commission of the felony such person discharged a semiautomatic firearm and its high-capacity box magazine or a "machine gun" as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.

The State used information and photos of the victim's injuries, as well as corroborating witness and expert testimony to meet its burden. For example, the State provided testimony from witness, Zeron Rance, that stated: "I walked towards the bar, and I saw a gentlemen holding a semiautomatic handgun." (T.T., Vol. 3, P. 277). And, then the State brought in an expert to show that the casing found at the scene matched those of a semi-automatic weapon. (T.T., Vol. 3, P. 297). The record supports the State's assertion that the purpose of offering this evidence was to meet its burden under the Florida statute for sentence enhancement.  An objection from defense counsel would have been denied.  Thus, Petitioner's claim lacks merit.

**Ground Seven:**      Trial counsel was ineffective because the cumulative effect of counsel's deficient performance and prejudice rendered therein.

All of Petitioner's individual claims lack merit.  "[W]here the alleged errors urged for consideration in a cumulative error analysis are individually . . . 'without merit, the claim of cumulative error also necessarily fails.'" *Hurst v. State*, 18 So. 3d 975 (Fla. 2009) (quoting *Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008).  Therefore, Petitioner's claim has no merit and should be denied.

**Ground Eight:**     Trial counsel was ineffective because counsel failed to call Torious
                     Williams as a witness.

Petitioner contends that he received ineffective assistance of counsel because his
Counsel did not call Torious Williams to testify. He claims Torious Williams' testimony
would have confirmed his claims about the shirt he was wearing on the night of the
incident. However, Petitioner does not offer any support for his assertion.  A claim about
the failure to call a witness should include: "(1) the identity of the prospective witness;
(2) that the prospective witness would have been available to testify at trial; (3) the
substance of the testimony; and (4) an explanation as to how the omission of the
testimony prejudiced the outcome of the trial." *Esquivel v. Sec'y, Dep't of Corr.*, 2009
WL 2135118, *5 (Fla. M.D. July 14, 2009).  A petitioner cannot merely speculate about a
witness. *Jordan v. McDonough*, 2008 WL 89848, *5 (Fla. M.D. Jan. 7, 2008). He must
present supporting evidence in the form of testimony or an affidavit.

First, there is no information in the record regarding any witness named Torious
Williams.  Petitioner fails to submit an affidavit from Mr. Williams specifying his
testimony or his availability as a witness.  Nor does Petitioner establish that his counsel
even knew about Mr. Williams.   Therefore, Holmes fails to demonstrate deficient
performance on the part of his trial counsel.

**Ground Nine:**     Trial counsel was ineffective because counsel failed to properly
                     cross-examine Tamaria Johnson.

Petitioner contends that the prosecution argued that he left the scene in Ms.
Johnson's Chevrolet car. He claims that if his counsel had questioned Ms. Johnson about
her car, she would have testified that it remained at the scene overnight, and this would

have rebutted the State's argument. The record indicates that the State actually argued that Petitioner drove off in Ms. Braswell's car, not Ms. Johnson's.

> State:  Opening Statements (T.T., Vol. 2, P. 123-24).
>
> "Now, while at the club Tamaria arrived there with some friends, a friend by the name of Leah Braswell, as well as others, came in separate cars or a couple cars among the friends. Tamaria maybe had a purple car. Leah Braswell has a white Chevy."
>
> State:  Closing Statements (T.T., Vol. 5, P. 480).
>
> "And what type of car does Leah Braswell have? A white Chevy, which is what he sees the defendant g[e]t into when he fled the scene."

The State argued that he took off in Ms. Braswell's white Chevrolet.  Holmes fails to demonstrate his counsel performed deficiently, or that the result of the trial would have been different had counsel cross-examined Ms. Johnson as Holmes suggests.   Therefore, Petitioner's claim fails both prongs of the *Strickland* standard.

**<u>Ground Ten:</u>**          Trial counsel was ineffective because counsel filed a boilerplate motion for a new trial.

Petitioner contends that his counsel, in his motion for a new trial, should have argued three additional issues: (1) the verdict was contrary to the law; (2) the verdict was contrary to the weight of the evidence; and (3) the trial court erred in not granting the defense's Motion for Judgment of Acquittal. However, Petitioner's contention that his counsel filed a "boilerplate" motion is without merit.

To the contrary, his counsel argued in the first motion for a new trial: "[t]he court erred as a matter of law in permitting the State to use an exhibit with bullet points, presenting a written outline of the State's interpretation of eye witness testimony, for

points of identification in closing arguments." (Vol. 1, Exhibit 1, P. 57). Further, in an amended Motion for New Trial, Petitioner's counsel argued that "[t]he Court erred in permitting the State to present three (3) testimony boards during the initial closing arguments that contained the prosecutor's interpretation, by written summary, of all the elements of eyewitness testimony out of context."

Petitioner's contention that his additional claims would of resulted in a different outcome is mere speculation.  He offers no facts to support the additional arguments. Mere speculation does not satisfy the *Strickland* standard.  *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011). Accordingly, Petitioner has not satisfied the *Strickland* deficient performance or prejudice standard. Therefore, this ground is  meritless.

**<u>Ground Eleven:</u>**     Trial counsel was ineffective because counsel failed to object to the trial court abandoning its neutrality.

Petitioner claims that his counsel should have objected when a witness was questioned and given instructions by the Judge.  An objection by counsel would have been meritless.  The record shows the following:

State:  Examination of Tamaria Johnson (T.T., Vol. 3, P. 197-202).

Q      Now, as for what the defendant, Sherrod Holmes, was wearing, what was he wearing that day?

A      I don't recall. I just remember it was a shirt with a picture on it.

Q      And there was writing on the back; is that correct?

A      When I think about it, I don't know. I don't recall that.  I remember - - I mean, those logo shirts have different logos on them.

Q      I'm not asking you normally. I'm asking you about this shirt.

A      I just remember a picture on it.

Q      Do you remember speaking with me the other day - -

A      Correct.

Q      - - trial preparation?

A      Monday, uh-huh.

Q      And do you remember telling me that it said R-I-P on the back?

A      From me looking at the shirt, I thought that's what it said.   But thinking about it four years ago and a T-shirt and with a picture on it, no, I can't recall that. And I had had like seven tequila shots. So, no, to be honest with you I can't recall that.

Q      But on Monday you recalled it?

A      On Monday you told me what was on the back of it, and we discussed - - I remember a picture. You said, Well was there writing on the front or the back, and I said, I remember a picture. So you and I went back and forth on that. And you said, Well, when I ask you a question, answer it. So, yes, I recall our conversation Monday.

Q      Okay. I recall it differently, but that's okay.

A      Okay.

Q      So he was wearing a white T-shirt with a picture on the front?

A      White, grayish, whatever, off-white, yeah.

Q      Well, there is a difference. A moment ago you said it was a white T-shirt.

A      If its white, it could be beige. It could be pure white. It could be white, yeah.

Q      Well, there is a difference between white and beige, now, isn't there?

A      You're asking me to recall something four years ago. To give you - -

Q      On - -

A      Whatever - - ask your question, please.

Q      I just did. On Monday you recalled it, correct?

A      Yes. But like I said, that was - -

Q       Now today you don't recall it?

A      No.

Q      Between Monday and today - -

A      Four years, no.

Q      Okay.

A      I just took garments to the cleaner - - It's a difference.

Q      I'm sorry. I didn't ask you another question.

A      Okay. Go ahead.

Q      Ma'am, I'm going to show you your statement to a police officer, and I'm going direct your attention to a particular area on the report. Could you please read that to yourself?  Tell me when you're finished.

A      From starting at "she"? She recalls Holmes - -

THE COURT: Excuse me, ma'am.

MR. ROSENWASSER: Read it to yourself.

THE COURT: Tell you what. Bailiff, would you take the jury to the jury room?

THE BAILIFF: Yes, your Honor.

(OUTSIDE PRESENCE OF THE JURY)

THE BAILIFF: Your Honor, the jury's out of the hearing of the court.

THE COURT: Ma'am, do you have a hearing loss?

THE WITNESS: No, I don't.

THE COURT: Do you have a learning disability?

THE WITNESS: No. I am a college student.

THE COURT: All Right.

THE WITNESS: Okay.

THE COURT: Now I want to make it real clear. I want to make sure that you understand that you are in a court of law and you are under oath.

THE WITNESS: I understand that.

THE COURT: And you are to answer questions propounded to you and nothing more. You are not here to ask questions or make gratuitous statements. Do you understand this?

THE WITNESS: I do.

THE COURT: Thank you very much.

THE WITNESS: You're welcome.

THE COURT: And I also need to caution you about a word called perjury.

THE WITNESS: Okay.

THE COURT: Do you understand what that is?

THE WITNESS: Yes, I do.

THE COURT: What is perjury?

THE WITNESS: When you say something that's untrue?

THE COURT: All right. While under oath.

THE WITNESS: I understand that.

THE COURT: All right. Thank you.

THE WITNESS: You're welcome.

THE COURT: Return the jury.

To support his claim, the Petitioner must present supporting evidence or a "sufficient showing to establish 'good cause'" to conclude that his counsel could have asserted an objection to the court's comments. *Bracy v. Gramley*, 520 U.S. 899, 901 (1997).  Petitioner has failed to do this.  The Judge only informed the witness about perjury. A Judge is allowed to inform a witness about possible perjury charges when a witness is not cooperating. *U.S. v. Viera*, 819 F.2d 498, 503 (5th Cir. 1987); *see U.S. v. Simmons*, 670 F.2d 365 (D.C Cir. 1982) (per curiam). "But warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." *Viera*, 819 F.2d at 503; *see Webb v. Texas*, 409 U.S. 95 (1972). Here, the Judge did not threaten or intimidate the witness.

Additionally, Petitioner relies on *Seago v. State*, 23 So. 3d 1269 (Fla. 2nd DCA 2010) as support for his claim. Petitioner contends his claim is factually similar. Petitioner is mistaken. In *Seago*, the Judge did not inform the witness about perjury. *Id.* at 1270. Instead, the Judge actually questioned the witness regarding deposition answers she had given.  *Id.* This was actual involvement in the trial.  Unlike in *Seago*, the Judge in the instant case neither intimidated nor helped the prosecution in any capacity, and the comments in question took place outside the presence of the jury.  Therefore Petitioner's claim lacks merit.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2254 (Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondents, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrel*l, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

DONE AND ORDERED at Tampa, Florida on this 7th day of August, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2013\13-cv-185 deny 2254.docx